SEALED

UNITED STATES DISTRICT COURT        FILED

WESTERN DISTRICT OF TEXAS 2010 JUL -7 PM 1:53

SAN ANTONIO DIVISION        CLERK U.S. DISTRICT COURT
                            WESTERN DISTRICT OF TEXAS
                            BY
                               DEPUTY CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. **SA10CR0593** FB |
| v. | INDICTMENT |
| ROBERT WARREN SCULLY        (1) | [Violations: 18 U.S.C. § 371, Conspiracy; 26 U.S.C. § 7206(1), Filing False Tax Returns; 26 U.S.C. § 7206(2) Aiding & Assisting the Preparation of False Tax Returns; 18 U.S.C. § 1621, Perjury] |
| KEVIN JAMES SCULLY        (2) | |

THE GRAND JURY CHARGES:

<u>COUNT ONE</u>
[18 U.S.C. § 371]

At all times relevant to this Indictment:

<u>PERSONS AND ENTITIES</u>

1.      Gourmet Express, L.L.C. (hereinafter referred to as "Gourmet Express") was a

Texas limited liability company, headquartered in San Antonio, Texas, owned at various times by

Defendants ROBERT WARREN SCULLY and KEVIN JAMES SCULLY, and a person known

to the Grand Jury but identified herein only as K.S., and at other times by a group of investors

known to the Grand Jury but identified herein only as I.G.  Gourmet Express was in the business

of manufacturing and distributing frozen skillet meals to various food retail and warehouse

establishments.

2.      Siam Star Seafood (hereinafter referred to as "Siam") was a shell company located

in Thailand, controlled by Defendants ROBERT WARREN SCULLY and KEVIN JAMES

SCULLY with the assistance of a person known to the Grand Jury but identified herein only as

N.P., the sister-in-law of Defendant ROBERT WARREN SCULLY.  Siam purported at various

times to be a supplier of shrimp to Gourmet Express.

3.        N&D International Business Consultants (hereinafter referred to as "N&D") was a shell company located in Thailand, controlled by Defendants ROBERT WARREN SCULLY and KEVIN JAMES SCULLY with the assistance of N.P.. N&D purported at various times to be a supplier of shrimp to Gourmet Express.

4.        N&DD International Co., Ltd., (hereinafter referred to as "N&DD") was a shell company located in Thailand, controlled by Defendants ROBERT WARREN SCULLY and KEVIN JAMES SCULLY with the assistance of N.P.. N&DD purported at various times to be a supplier of shrimp to Gourmet Express.

5.        Groupwell International (HK) Limited (hereinafter referred to as "Groupwell") was a shell company located in Thailand, controlled by Defendants ROBERT WARREN SCULLY and KEVIN JAMES SCULLY with the assistance of N.P.. Groupwell purported at various times to be a supplier of shrimp to Gourmet Express.

6.        Defendant ROBERT WARREN SCULLY was the uncle of KEVIN JAMES SCULLY and the husband of a person known to the Grand Jury but identified herein only as N.S.. He was an owner of and served as the president and chief executive officer of Gourmet Express.

7.        Defendant KEVIN JAMES SCULLY was the nephew of ROBERT WARREN SCULLY and the husband of a person known to the Grand Jury but identified herein only as T.S.. He was an owner of and served as the chief financial officer of Gourmet Express.

<u>THE OBJECT OF THE CONSPIRACY</u>

8.        Beginning in or about April 2001, and continuing to in or about July 2009 in the

2

Western District of Texas and elsewhere, the Defendants,

ROBERT WARREN SCULLY
and
KEVIN JAMES SCULLY,

and persons known and unknown to the Grand Jury, did unlawfully, willfully, and knowingly

conspire, combine, confederate, and agree together and with each other and with other

individuals both known and unknown to the Grand Jury to defraud the United States for the

purpose of impeding, impairing, obstructing, and defeating the lawful Government functions of

the Internal Revenue Service of the Treasury Department (herein "I.R.S.") in the ascertainment,

computation, assessment, and collection of the revenue:  to wit, income taxes.

## MANNER AND MEANS

The manner and means by which the conspiracy was sought to be accomplished included,

among others, the following:

9.      Defendants ROBERT WARREN SCULLY and KEVIN JAMES SCULLY caused

Siam, N&D, N&DD, and Groupwell to be formed in Thailand, using the home address of N.P..

10.      Defendants ROBERT WARREN SCULLY and KEVIN JAMES SCULLY hid

their interest and control over Siam, N&D, N&DD, and Groupwell from K.S., Gourmet's

accountant, and later I.G., its principals and employees, as well as the I.R.S..

11.      Defendant ROBERT WARREN SCULLY informed the actual suppliers of

shrimp to Gourmet Express that Gourmet Express had a "Thailand Agent", N.P., who was to be

paid a commission.

12.      Defendant ROBERT WARREN SCULLY informed the actual suppliers of

shrimp to Gourmet Express to include a 3% "commission" for the "Thailand Agent" in the price

quote to be provided by the supplier to Gourmet Express.

13.     Defendants ROBERT WARREN SCULLY and KEVIN JAMES SCULLY caused Siam, N&D, N&DD, and Groupwell to appear to be the suppliers of shrimp to Gourmet Express.

14.     Defendants ROBERT WARREN SCULLY and KEVIN JAMES SCULLY used Siam, N&D, N&DD, and Groupwell as intermediaries between Gourmet Express and the actual suppliers of shrimp to Gourmet Express to inflate the cost of shrimp paid by Gourmet Express by anywhere from 10¢ to 95¢ per pound.

15.     Defendants ROBERT WARREN SCULLY and KEVIN JAMES SCULLY caused Gourmet Express to pay this inflated price for its shrimp by wiring money from various bank accounts of Gourmet Express to the bank accounts of Siam, N&D, N&DD, and Groupwell.

16.     Defendants ROBERT WARREN SCULLY and KEVIN JAMES SCULLY caused N.P. to deposit the excess of the inflated price over the actual price paid to the actual suppliers into accounts at Barclay's Bank in London, England, Hong Kong Shanghai Bank in Hong Kong, and Standard Chartered Bank in Singapore in the name of the mother of T.S., known to the Grand Jury, but identified herein only as M.K..

17.     Defendants ROBERT WARREN SCULLY and KEVIN JAMES SCULLY caused the transfer by wire of the excess of the inflated price over the actual price paid to the actual suppliers from the accounts at Barclay's Bank, Hong Kong Shanghai Bank, and Standard Chartered Bank to accounts in N.S.'s name at Union Bank of California, and T.S.'s name at First National Bank in Edinburg, Texas, and Flanagan State Bank in El Paso, Illinois.

18.     Defendants ROBERT WARREN SCULLY and KEVIN JAMES SCULLY and T.S. and N.S. then converted this excess to their own personal use and enjoyment.

19.    Defendant KEVIN JAMES SCULLY maintained a secret set of books and records detailing the actual purchase prices paid by Gourmet Express for its imported products and the inflated amounts he and Defendant ROBERT WARREN SCULLY caused Gourmet Express to pay for the imported products.

## OVERT ACTS

In furtherance of this conspiracy and to effect and accomplish its objects, one or more of the Defendants or conspirators, both indicted and unindicted, committed, among others, the following overt acts in the Western District of Texas and elsewhere:

20.    On or about February 15, 2002, Defendant KEVIN JAMES SCULLY instructed the wife of K.S. to wire transfer $30,000 from a Gourmet Express subsidiary to Siam.

21.    On or about February 4, 2004, Defendants ROBERT WARREN SCULLY and KEVIN JAMES SCULLY caused $19,972.00 to be wire transferred from M.K.'s account at Standard Charter Bank to N.S.'s account at Union Bank of California.

22.    On or about June 28, 2004, Defendants caused $39,972.00 to be wire transferred from M.K.'s account at Standard Charter Bank to T.S.'s account at First National Bank.

23.    On or about August 2, 2004, T.S. transferred $1,800.00 from her account at First National Bank to a VGI-GNMA investment account.

24.    On or about October 22, 2004, Defendant KEVIN JAMES SCULLY filed a false individual income tax return for himself and T.S. for the year 2003.

25.    On or about June 13, 2005, Defendants caused $74,972.00 to be wire transferred from M.K.'s account at Standard Charter Bank to T.S.'s account at Flanagan State Bank.

26.    On or about October 7, 2005, T.S. wrote a check to herself in the amount of

$30,000.00.

27.    On or about October 12, 2005, Defendant KEVIN JAMES SCULLY filed a false individual income tax return for himself and T.S. for the year 2004.

28.    On or about October 12, 2005, Defendants ROBERT WARREN SCULLY and KEVIN JAMES SCULLY caused the filing of a false individual income tax return for Defendant ROBERT WARREN SCULLY and N.S. for the year 2004.

29.    On or about April 15, 2006, Defendants ROBERT WARREN SCULLY and KEVIN JAMES SCULLY caused the filing of a false individual income tax return for Defendant ROBERT WARREN SCULLY and N.S. for the year 2005.

30.    On or about September 20, 2006, Defendant KEVIN JAMES SCULLY executed what purported to be a contract on behalf of Gourmet Express to buy 1,394,000 pounds of shrimp from Groupwell at a price not to exceed $3.50 per pound.

31.    On or about October 6, 2006, Defendant KEVIN JAMES SCULLY filed a false individual income tax return for himself and T.S. for the year 2005.

32.    On or about October 16, 2006, Defendant KEVIN JAMES SCULLY executed what purported to be a contract on behalf of Gourmet Express to buy 960,000 pounds of sliced mushrooms from Groupwell at a price of 59¢ per pound.

33.    On or about April 17, 2007, Defendants KEVIN JAMES SCULLY and ROBERT WARREN SCULLY caused the preparation and filing of a false Form 1065 tax return for the 2006 tax year on behalf of Gourmet Express.

34.    On or about June 2, 2007, Defendant ROBERT WARREN SCULLY testified falsely during a temporary injunction hearing that he was unaware that a company controlled by

him received inflated payments for the purchase of shrimp.

35.     On or about June 2, 2007, Defendant ROBERT WARREN SCULLY testified

falsely during a temporary injunction hearing that acting on behalf of Gourmet Express he only

negotiated with N&D, Siam Star and Groupwell.

36.     On or about June 2, 2007, Defendant ROBERT WARREN SCULLY testified

falsely during a temporary injunction hearing that he did not know who the "underlying

suppliers" were.

37.     On or about June 2, 2007, Defendant ROBERT WARREN SCULLY testified

falsely during a temporary injunction hearing that he was unaware of any books and records for

of Siam, N&D, N&DD, and Groupwell.

38.     On or about September 24, 2007, Defendant KEVIN JAMES SCULLY testified

falsely during a bankruptcy hearing for Gourmet Express that he did not receive a full invoice

listing for the products imported by Gourmet Express.

39.     On or about October 19, 2007, Defendants ROBERT WARREN SCULLY and

KEVIN JAMES SCULLY caused the filing of a false individual income tax return for Defendant

ROBERT WARREN SCULLY and N.S. for the year 2003.

40.     On or about October 20, 2007, Defendant KEVIN JAMES SCULLY filed a false

individual income tax return for himself and T.S. for the year 2006.

41.     On or about April 1, 2008, T.S. wire transferred $40,874.54 from her account at

Flanagan State Bank to her and Defendant KEVIN JAMES SCULLY's account at First National

Bank of Muhlenberg.

All in violation of Title 18, United States Code, § 371.

## COUNT TWO
[26 U.S.C. § 7206(1)]

On or about October 22, 2004, in the Western District of Texas, the Defendant,

KEVIN JAMES SCULLY,

a resident of Arroyo City, Texas, did willfully make and subscribe a joint U.S. Individual Income

Tax Return, Form 1040, for the year 2003, which was verified by a written declaration that it was

made under the penalties of perjury and was filed with the Director, Internal Revenue Service

Center, at Austin, Texas, which said tax return he did not believe to be true and correct as to

every material matter in that the said tax return reported total income on line 22 in the amount of

$265,341, whereas, as he then and there well knew and believed, he had received total income

well in excess of that amount.

In violation of Title 26, United States Code, § 7206(1).

## COUNT THREE
[26 U.S.C. § 7206(1)]

On or about October 11, 2005, in the Western District of Texas, the Defendant,

KEVIN JAMES SCULLY,

a resident of Harlingen, Texas, did willfully make and subscribe a joint U.S. Individual Income

Tax Return, Form 1040, for the year 2004, which was verified by a written declaration that it was

made under the penalties of perjury and was filed with the Director, Internal Revenue Service

Center, at Austin, Texas, which said tax return he did not believe to be true and correct as to

every material matter in that the said tax return reported total income on line 22 in the amount of

$-2,932, whereas, as he then and there well knew and believed, he had received total income well

in excess of that amount.

In violation of Title 26, United States Code, § 7206(1).

## COUNT FOUR
[26 U.S.C. § 7206(1)]

On or about October 6, 2006, in the Western District of Texas, the Defendant,

KEVIN JAMES SCULLY,

a resident of Harlingen, Texas, did willfully make and subscribe a joint U.S. Individual Income

Tax Return, Form 1040, for the year 2005, which was verified by a written declaration that it was

made under the penalties of perjury and was filed with the Director, Internal Revenue Service

Center, at Austin, Texas, which said tax return he did not believe to be true and correct as to

every material matter in that the said tax return reported total income on line 22 in the amount of

$557,908, whereas, as he then and there well knew and believed, he had received total income

well in excess of that amount.

In violation of Title 26, United States Code, § 7206(1).

## COUNT FIVE
[26 U.S.C. § 7206(1)]

On or about October 20, 2007, in the Western District of Texas, the Defendant,

KEVIN JAMES SCULLY,

a resident of Harlingen, Texas, did willfully make and subscribe a joint U.S. Individual Income

Tax Return, Form 1040, for the year 2006, which was verified by a written declaration that it was

made under the penalties of perjury and was filed with the Director, Internal Revenue Service

Center, at Austin, Texas, which said tax return he did not believe to be true and correct as to

every material matter in that the said tax return reported total income on line 22 in the amount of

$955,335, whereas, as he then and there well knew and believed, he had received total income

well in excess of that amount.

In violation of Title 26, United States Code, § 7206(1).

COUNT SIX
[26 U.S.C. § 7206(2)]

On or about October 12, 2005, in the Western District of Texas, the Defendants,

ROBERT WARREN SCULLY
and
KEVIN JAMES SCULLY,

did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation

to the Internal Revenue Service, of a joint U.S. Individual Income Tax Return, Form 1040, of

ROBERT WARREN SCULLY and N.S. for the calendar year 2004, which was false and

fraudulent as to a material matter, in that the said tax return reported total income on line 22 in

the amount of $-456,053, whereas, as the Defendants then and there well knew and believed,

ROBERT WARREN SCULLY and N.S. had received total income well in excess of that

amount.

In violation of Title 26, United States Code, § 7206(2).

COUNT SEVEN
[26 U.S.C. § 7206(2)]

On or about April 15, 2006, in the Western District of Texas, the Defendants,

ROBERT WARREN SCULLY
and
KEVIN JAMES SCULLY,

did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation

to the Internal Revenue Service, of a joint U.S. Individual Income Tax Return, Form 1040, of

ROBERT WARREN SCULLY and N.S. for the calendar year 2005, which was false and

10

fraudulent as to a material matter, in that the said tax return reported total income on line 22 in

the amount of $524,652, whereas, as the Defendants then and there well knew and believed,

ROBERT WARREN SCULLY and N.S. had received total income well in excess of that

amount.

In violation of Title 26, United States Code, § 7206(2).

COUNT EIGHT
[26 U.S.C. § 7206(2)]

On or about October 19, 2007, in the Western District of Texas, the Defendants,

ROBERT WARREN SCULLY
and
KEVIN JAMES SCULLY,

did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation

to the Internal Revenue Service, of a joint U.S. Individual Income Tax Return, Form 1040, of

ROBERT WARREN SCULLY and N.S. for the calendar year 2006, which was false and

fraudulent as to a material matter, in that the said tax return reported total income on line 22 in

the amount of $1,776,646, whereas, as the Defendants then and there well knew and believed,

ROBERT WARREN SCULLY and N.S. had received total income well in excess of that

amount.

In violation of Title 26, United States Code, § 7206(2).

COUNT NINE
[18 U.S.C. § 1621]

On or about September 24, 2007, in the Western District of Texas, the Defendant,

KEVIN JAMES SCULLY,

having duly taken an oath before the United States Trustee during the meeting of creditors, in

11

connection with a proceeding in Bankruptcy Court, a case in which Title 11, United States Code, § 343 authorizes an oath to be administered, that he would testify truly, did willfully and knowingly and contrary to said oath state material matter which he did not believe to be true, as more fully set forth below.

At the time and place aforesaid, Gourmet Express had filed for reorganization under Chapter 11 of the United States Bankruptcy Code. It was material to the proceeding to know what documents related to purchases of supplies and materials were held by Gourmet Express.

At the time and place aforesaid in the first paragraph of this count, KEVIN JAMES SCULLY appeared as a witness before the United States Trustee, and then and there being under oath as aforesaid, testified falsely before the United States Trustee with respect to the aforesaid material matter as follows:

"Q. And MG Mayer, your customs agent, forwards those invoices to Gourmet Express, correct? A. No, that is not correct.

"Q. Okay. So does Gourmet Express have any of the invoices within its records that tie to the customs duties that are paid on imports? A. No."

The aforesaid testimony of KEVIN JAMES SCULLY, as he then and there well knew and believed, was false in that customs agent MG Mayer did in fact forward invoices to Gourmet Express, and Gourmet Express did in fact have invoices within its records that tie to the customs

duties that it paid on imports.

All in violation of Title 18, United States Code, § 1621.

A TRUE BILL.



_____ AND JURY

JOHN E.MURPHY
United States Attorney

WILLIAM R. HARRIS
Assistant United States Attorney