UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. SA 10 CR 593 (1) DAE |
| v. | SECOND SUPERSEDING INDICTMENT |
| ROBERT WARREN SCULLY | |
| | [Violations: 18 U.S.C. § 371, Conspiracy; 26 U.S.C. § 7206(2), Aiding & Assisting in the Preparation of False Tax Returns; 18 U.S.C. § 1349, Conspiracy; 18 U.S.C. § 1343, Wire Fraud] |

THE GRAND JURY CHARGES:

<u>COUNT ONE</u>
[18 U.S.C. § 371]

At all times relevant to this Indictment:

<u>PERSONS AND ENTITIES</u>

1. Gourmet Express, L.L.C. (hereinafter referred to as "Gourmet Express") was a Texas limited liability company, headquartered in San Antonio, Texas, owned at various times by Defendant ROBERT WARREN SCULLY, and a person known to the Grand Jury but identified herein only as K.J.S., and a person known to the Grand Jury but identified herein only as K.M.S., and at other times by a group of investors known to the Grand Jury but identified herein only as I.G. Gourmet Express was in the business of manufacturing and distributing frozen skillet meals to various food retail and warehouse establishments. Gourmet Express maintained its accounting and e-mail computer server in Garden Ridge, Texas. K.J.S. maintained an office in Gridley, Illinois.

2. Siam Star Seafood (hereinafter referred to as "Siam") was a company located in

Thailand, operated by a person known to the Grand Jury but identified herein only as N.P., the sister-in-law of Defendant ROBERT WARREN SCULLY. Siam purported at various times to be a supplier of shrimp and other ingredients to Gourmet Express via billings for those items to Gourmet Express.

3. N&D International Business Consultants (hereinafter referred to as "N&D") was a company located in Thailand, partially operated by N.P.. N&D purported at various times to be a supplier of shrimp and other ingredients to Gourmet Express via billings for those items to Gourmet Express.

4. Groupwell International (HK) Limited (hereinafter referred to as "Groupwell") was a Hong Kong company located in Thailand, operated by N.P.. Groupwell purported at various times to be a supplier of shrimp and other ingredients to Gourmet Express via billings for those items to Gourmet Express.

5. Defendant ROBERT WARREN SCULLY was the uncle of K.J.S. and the husband of a person known to the Grand Jury but identified herein only as N.S.. He was an owner of and served as the president and chief executive officer of Gourmet Express.

6. K.J.S. was the nephew of Defendant ROBERT WARREN SCULLY and the husband of a person known to the Grand Jury but identified herein only as T.S.. He was an owner of and served as the chief financial officer of Gourmet Express.

## THE OBJECT OF THE CONSPIRACY

7. Beginning in or about April 2001, and continuing to in or about July 2009 in the Western District of Texas and elsewhere, the Defendant,

ROBERT WARREN SCULLY,

K.J.S., and persons known and unknown to the Grand Jury, did unlawfully, willfully, and

knowingly conspire, combine, confederate, and agree together and with each other and with other individuals both known and unknown to the Grand Jury to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful Government functions of the Internal Revenue Service of the Treasury Department (herein "I.R.S.") in the ascertainment, computation, assessment, and collection of the revenue: to wit, income taxes.

## MANNER AND MEANS

The manner and means by which the conspiracy was sought to be accomplished included, among others, the following:

8. Defendant ROBERT WARREN SCULLY and K.J.S. hid N.P.'s relationship with Defendant ROBERT WARREN SCULLY, and her interest in and control over Siam, N&D, and Groupwell from K.M.S., Gourmet's accountant, and later I.G., its principals and employees, as well as the I.R.S..

9. Defendant ROBERT WARREN SCULLY informed the actual suppliers of shrimp and other ingredients to Gourmet Express that Gourmet Express had a "Thailand Agent", N.P., who was to be paid a commission.

10. Defendant ROBERT WARREN SCULLY informed the actual suppliers of shrimp and other ingredients to Gourmet Express to include a 3% "commission" for the "Thailand Agent" in the price quote to be provided by the supplier to Gourmet Express.

11. Defendant ROBERT WARREN SCULLY and K.J.S., aided by N.P., caused Siam, N&D, and Groupwell to appear to be the actual suppliers of shrimp and other ingredients to Gourmet Express.

12. Defendant ROBERT WARREN SCULLY and K.J.S., aided by N.P., caused Siam, N&D, and Groupwell to send purchase orders and invoices by facsimile and e-mail for the

3

purported sales of shrimp and other ingredients to Gourmet Express.

13. Defendant ROBERT WARREN SCULLY and K.J.S. caused the purchase orders and invoices to be entered in the computerized books and records of Gourmet Express.

14. Defendant ROBERT WARREN SCULLY and K.J.S., aided by N.P., used Siam, N&D, and Groupwell as intermediaries between Gourmet Express and the actual suppliers of shrimp and other ingredients to Gourmet Express to inflate the cost of shrimp and other ingredients paid by Gourmet Express by anywhere from 10¢ to 95¢ per pound.

15. Defendant ROBERT WARREN SCULLY and K.J.S. caused Gourmet Express to pay this inflated price for its shrimp and other ingredients by wiring money from various bank accounts of Gourmet Express to the bank accounts of Siam, N&D, and Groupwell.

16. Defendant ROBERT WARREN SCULLY and K.J.S. caused N.P. to deposit a significant portion of the excess of the inflated price over the actual price paid to the actual suppliers into accounts at Barclay's Bank in London, England, and Standard Chartered Bank in Singapore in the name of the mother of T.S., known to the Grand Jury, but identified herein only as M.K..

17. Defendant ROBERT WARREN SCULLY and K.J.S. caused the transfer by wire of a significant portion of the excess of the inflated price over the actual price paid to the actual suppliers from the accounts at Barclay's Bank, and Standard Chartered Bank to accounts in N.S.'s name at Union Bank of California, and T.S.'s name at First National Bank in Edinburg, Texas, and Flanagan State Bank in El Paso, Illinois.

18. Defendant ROBERT WARREN SCULLY and K.J.S. and T.S. and N.S. then converted this excess to their own personal use and enjoyment.

19. K.J.S. maintained a secret set of books and records detailing the actual purchase

prices paid by Gourmet Express for its imported products and the inflated amounts he and Defendant ROBERT WARREN SCULLY caused Gourmet Express to pay for the imported products.

## OVERT ACTS

In furtherance of this conspiracy and to effect and accomplish its objects, the Defendant or one or more of the unindicted conspirators, committed, among others, the following overt acts in the Western District of Texas and elsewhere:

20. On or about February 15, 2002, K.J.S. instructed the wife of K.M.S. to wire transfer $30,000 from a Gourmet Express subsidiary to Siam.

21. On or about February 4, 2004, Defendant ROBERT WARREN SCULLY and K.J.S. caused $19,972.00 to be wire transferred from N.P.'s account at Standard Chartered Bank to N.S.'s account at Union Bank of California.

22. On or about June 28, 2004, Defendant ROBERT WARREN SCULLY and K.J.S. caused $39,972.00 to be wire transferred from M.K.'s account at Standard Chartered Bank to T.S.'s account at First National Bank.

23. On or about August 2, 2004, T.S. transferred $1,800.00 from her account at First National Bank to a VGI-GNMA investment account.

24. On or about October 22, 2004, K.J.S. filed a false individual income tax return for himself and T.S. for the year 2003.

25. On or about June 13, 2005, Defendant ROBERT WARREN SCULLY and K.J.S. caused $74,972.00 to be wire transferred from M.K.'s account at Standard Chartered Bank to T.S.'s account at Flanagan State Bank.

26. On or about October 7, 2005, T.S. wrote a check to herself in the amount of

$30,000.00 from her account at Flanagan State Bank.

27. On or about October 12, 2005, K.J.S. filed a false individual income tax return for himself and T.S. for the year 2004.

28. On or about October 12, 2005, Defendant ROBERT WARREN SCULLY and K.J.S. caused the filing of a false individual income tax return for Defendant ROBERT WARREN SCULLY and N.S. for the year 2004.

29. On or about April 15, 2006, Defendant ROBERT WARREN SCULLY and K.J.S. caused the filing of a false individual income tax return for Defendant ROBERT WARREN SCULLY and N.S. for the year 2005.

30. On or about September 20, 2006, K.J.S. executed what purported to be a contract on behalf of Gourmet Express to buy 1,394,000 pounds of shrimp and other ingredients from Groupwell at a price not to exceed $3.50 per pound.

31. On or about October 6, 2006, K.J.S. filed a false individual income tax return for himself and T.S. for the year 2005.

32. On or about October 16, 2006, K.J.S. executed what purported to be a contract on behalf of Gourmet Express to buy 960,000 pounds of sliced mushrooms from Groupwell at a price of 59¢ per pound.

33. On or about April 17, 2007, K.J.S. and Defendant ROBERT WARREN SCULLY caused the preparation and filing of a false Form 1065 tax return for the 2006 tax year on behalf of Gourmet Express.

34. On or about June 2, 2007, Defendant ROBERT WARREN SCULLY testified falsely during a temporary injunction hearing that acting on behalf of Gourmet Express he only negotiated with N&D, Siam Star and Groupwell.

35. On or about June 2, 2007, Defendant ROBERT WARREN SCULLY testified falsely during a temporary injunction hearing that he did not know who the "underlying suppliers" were.

36. On or about June 2, 2007, Defendant ROBERT WARREN SCULLY testified falsely during a temporary injunction hearing that he did not possess any books and records of Siam, N&D, and Groupwell.

37. On or about September 24, 2007, K.J.S. testified falsely during a bankruptcy hearing for Gourmet Express that he did not receive a full invoice listing for the products imported by Gourmet Express.

38. On or about October 18, 2004, Defendant ROBERT WARREN SCULLY and K.J.S. caused the filing of a false individual income tax return for Defendant ROBERT WARREN SCULLY and N.S. for the year 2003.

39. On or about October 20, 2007, K.J.S. filed a false individual income tax return for himself and T.S. for the year 2006.

40. On or about April 1, 2008, T.S. wire transferred $40,874.54 from her account at Flanagan State Bank to her and K.J.S.'s account at First National Bank of Muhlenberg.

All in violation of Title 18, United States Code, § 371.

## COUNT TWO
[26 U.S.C. § 7206(2)]

On or about October 12, 2005, in the Western District of Texas, the Defendant,

ROBERT WARREN SCULLY,

did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the Internal Revenue Service, of a joint U.S. Individual Income Tax Return, Form 1040, of

7

Defendant ROBERT WARREN SCULLY and N.S. for the calendar year 2004, which was false and fraudulent as to a material matter, in that the said tax return reported total income on line 22 in the amount of $-456,053, whereas, as the Defendant then and there well knew and believed, he and N.S. had received total income well in excess of that amount.

In violation of Title 26, United States Code, § 7206(2).

## COUNT THREE
[26 U.S.C. § 7206(2)]

On or about April 15, 2006, in the Western District of Texas, the Defendant,

ROBERT WARREN SCULLY,

did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the Internal Revenue Service, of a joint U.S. Individual Income Tax Return, Form 1040, of Defendant ROBERT WARREN SCULLY and N.S. for the calendar year 2005, which was false and fraudulent as to a material matter, in that the said tax return reported total income on line 22 in the amount of $524,652, whereas, as the Defendant then and there well knew and believed, he and N.S. had received total income well in excess of that amount.

In violation of Title 26, United States Code, § 7206(2).

## COUNT FOUR
[26 U.S.C. § 7206(2)]

On or about October 19, 2007, in the Western District of Texas, the Defendant,

ROBERT WARREN SCULLY,

did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the Internal Revenue Service, of a joint U.S. Individual Income Tax Return, Form 1040, of Defendant ROBERT WARREN SCULLY and N.S. for the calendar year 2006, which was false and fraudulent as to a material matter, in that the said tax return reported total income on line 22 in

the amount of $1,776,646, whereas, as the Defendant then and there well knew and believed, he and N.S. had received total income well in excess of that amount.

In violation of Title 26, United States Code, § 7206(2).

## COUNT FIVE
[18 U.S.C. § 1349]

1.  Paragraphs One through Six (Persons and Entities), and paragraphs Eight through Nineteen (Manner and Means) of Count One are incorporated herein as if fully restated.

### THE OBJECT OF THE CONSPIRACY

2.  Beginning in or about April 2001, and continuing to in or about July 2009 in the Western District of Texas and elsewhere, the Defendant,

### ROBERT WARREN SCULLY,

K.J.S., and persons known and unknown to the Grand Jury, did unlawfully, willfully, and knowingly conspire, combine, confederate, and agree together and with each other and with other individuals both known and unknown to the Grand Jury to devise and execute a scheme to defraud K.M.S. and I.G. and to obtain money by means of false and fraudulent pretenses, representations and promises, utilizing transmissions by wire in interstate and foreign commerce, in violation of Title 18, United States Code, § 1343.

### OVERT ACTS

In furtherance of this conspiracy and to effect and accomplish its objects, the Defendant or one or more of the unindicted conspirators, committed, among others, the following overt acts in the Western District of Texas and elsewhere:

3.  On or about November 22, 2005, K.J.S. caused Groupwell invoice number GW-2005/124 including the amount of $15,793.73 to be entered in the computer system of

Gourmet Express and transmitted to its server.

4. On or about December 2, 2005, K.J.S. caused Groupwell invoice number GW-2005/128 in the amount of $17,290.00 to be entered in the computer system of Gourmet Express and transmitted to its server.

5. On or about December 8, 2005, K.J.S. caused Groupwell invoice number GW-2005/130 including the amount of $17,290.00 to be entered in the computer system of Gourmet Express and transmitted to its server.

6. On or about January 9, 2006, K.J.S. caused Groupwell invoice number GW-2005/132 including the amount of $17,456.23 to be entered in the computer system of Gourmet Express and transmitted to its server.

7. On or about January 26, 2006, K.J.S. caused Groupwell invoice number GW-2005/142 including the amount of $17,456.25 to be entered in the computer system of Gourmet Express and transmitted to its server.

8. On or about January 26, 2006, K.J.S. caused Groupwell invoice number GE-2006/002 including the amount of $10,806.25 to be entered in the computer system of Gourmet Express and transmitted to its server.

9. On or about February 16, 2006, K.J.S. caused Groupwell invoice number GE-2006/008 including the amount of $17,290.00 to be entered in the computer system of Gourmet Express and transmitted to its server.

10. On or about March 10, 2006, K.J.S. caused Groupwell invoice number GE-2006/015 including the amount of $16,625.00 to be entered in the computer system of Gourmet Express and transmitted to its server.

11. On or about March 20, 2006, K.J.S. caused Groupwell invoice number

GE-2006/022 including the amount of $19,118.75 to be entered in the computer system of Gourmet Express and transmitted to its server.

12. On or about April 12, 2006, K.J.S. caused Groupwell invoice number GE-2006/035 including the amount of $17,539.38 to be entered in the computer system of Gourmet Express and transmitted to its server.

13. On or about May 3, 2006, K.J.S. caused Groupwell invoice number GE-2006/017 including the amount of $116,375.00 to be entered in the computer system of Gourmet Express and transmitted to its server.

14. On or about July 25, 2006, K.J.S. caused Groupwell invoice number GE-2006/101 including the amount of $116,375.00 to be entered in the computer system of Gourmet Express and transmitted to its server.

15. On or about August 10, 2006, K.J.S. caused Groupwell invoice number GE-2006/114 including the amount of $20,781.24 to be entered in the computer system of Gourmet Express and transmitted to its server.

16. On or about September 15, 2006, K.J.S. caused Groupwell invoice number GE-2006/125 including the amount of $20,781.25 to be entered in the computer system of Gourmet Express and transmitted to its server.

17. On or about September 27, 2006, K.J.S. caused Groupwell invoice number GE-2006/132 including the amount of $113,465.63 to be entered in the computer system of Gourmet Express and transmitted to its server.

18. On or about October 30, 2006, K.J.S. caused Groupwell invoice number GE-2006/153 including the amount of $38,653.13 to be entered in the computer system of Gourmet Express and transmitted to its server.

19. On or about November 10, 2006, K.J.S. caused Groupwell invoice number GE-2006/156 including the amount of $31,587.50 to be entered in the computer system of Gourmet Express and transmitted to its server.

20. On or about December 15, 2006, K.J.S. caused Groupwell invoice number GE-2006/180 including the amount of $116,375.00 to be entered in the computer system of Gourmet Express and transmitted to its server.

All in violation of Title 18, United States Code, § 1349.

## COUNTS SIX THROUGH TEN
[18 U.S.C. § 1343]

1. Paragraphs One through Six (Persons and Entities) of Count One are incorporated herein as if fully restated.

### The Scheme

2. From in or about April 2001, and continuing to in or about July 2009 in the Western District of Texas and elsewhere, the Defendant,

ROBERT WARREN SCULLY,

aided and abetted by K.J.S. and by others known and unknown to the Grand Jury, did unlawfully, willfully, and knowingly devise and execute a scheme to defraud K.M.S. and I.G. and to obtain money by means of false and fraudulent pretenses, representations and promises through the actions set forth in the "Manner and Means" portion of Count One, which are incorporated herein as if fully restated.

3. Through this scheme, Defendant ROBERT WARREN SCULLY and K.J.S. fraudulently obtained approximately $3,901,859.50.

### The Executions of the Scheme

On or about the date stated below, for the Count listed below, in the Western District of Texas and elsewhere, the Defendant,

ROBERT WARREN SCULLY,

aided and abetted by K.J.S. and by others known and unknown to the Grand Jury, and for the purpose of executing the scheme to defraud and to obtain money by means of false and fraudulent pretenses, representations and promises, transmitted and caused to be transmitted by wire in interstate and foreign commerce writings as set forth below.

| Count | Date | Item | Wired From | Wired To | Amount |
| --- | --- | --- | --- | --- | --- |
| 6 | 11/22/05 | Groupwell Invoice # GW-2005/128 | Gridley, Illinois | San Antonio, Texas | $15,793.73 |
| 7 | 12/8/05 | Groupwell Invoice # GW-2005/124 | Gridley, Illinois | San Antonio, Texas | $17,290.00 |
| 8 | 5/3/06 | Groupwell Invoice # GE-2006/017 | Gridley, Illinois | San Antonio, Texas | $116,375.00 |
| 9 | 7/25/06 | Groupwell Invoice # GE-2006/101 | Gridley, Illinois | San Antonio, Texas | $116,375.00 |
| 10 | 12/15/06 | Groupwell Invoice # GE-2006/180 | Gridley, Illinois | San Antonio, Texas | $116,375.00 |

All in violation of Title 18, United States Code, §§ 1343 and 2.

## NOTICE OF UNITED STATES OF AMERICA'S DEMAND FOR FORFEITURE

I.
Forfeiture Statutes Relating to Conspiracy and Wire Fraud
[Title 18 U.S.C. §§ 1343 and 1349, subject to forfeiture pursuant to
Title 18 U.S.C. § 981(a)(1)(C), made applicable to criminal forfeiture by
Title 28 U.S.C. § 2461(c). See Fed. R. Crim. P. 32.2]

As a result of the foregoing criminal violations set forth in Counts Five through Ten,

which are punishable by imprisonment for more than one year, the United States gives notice that it intends to forfeit real and personal properties from DEFENDANT ROBERT WARREN SCULLY and K.J.S.. Said DEFENDANT shall forfeit all right, title and interest in any real and personal properties to the United States pursuant to Title 18 U.S.C. § 981(a)(1)(C), made applicable to criminal forfeiture pursuant to Title 28 U.S.C. § 2461(c), which states the following:

> Title 18 U.S.C. § 981.
> (a)(1) The following property is subject to forfeiture to the United States:
> \* \* \*
> (C) Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of section. . . of this title or any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.
>
> Title 28 U.S.C. § 2461.
> (c) If a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized, the Government may include notice of the forfeiture in the indictment or information pursuant to the Federal Rules of Criminal Procedure. If the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case pursuant to the Federal Rules of Criminal Procedure . . .

## II.
### Money Judgment

As a result of the foregoing criminal violations set forth in Counts Five through Ten, DEFENDANT ROBERT WARREN SCULLY and K.J.S. shall forfeit to the United States

pursuant to Title 18 U.S.C. § 981(a)(1)(C), made applicable to criminal forfeiture pursuant to Title 28 U.S.C. § 2461(c), the following described Money Judgment:

> A sum of money representing the amount of proceeds obtained, directly or indirectly, as a result of the violations set out in the above-described Counts and for which DEFENDANT ROBERT WARREN SCULLY and K.J.S. are jointly and severally liable.

### III.
### Substitute Assets

If any of the money judgment described above, as a result of any act or omission of the DEFENDANT ROBERT WARREN SCULLY and K.J.S.:

   a. cannot be located upon the exercise of due diligence;
   b. has been transferred or sold to, or deposited with, a third person;
   c. has been placed beyond the jurisdiction of the Court;
   d. has been substantially diminished in value; or
   e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States of America to seek forfeiture of any other property of DEFENDANT ROBERT WARREN SCULLY and K.J.S., up to the value of said money judgment, as substitute assets pursuant to Title 18 U.S.C. § 982(b)(1) and Title 21 U.S.C. § 853(p): *(See* Fed.R.Crim.P. 32.2 ).

A TRU[...]RY

ROBERT PITMAN
United States Attorney

WILLIAM R. HARRIS
Assistant United States Attorney