UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| Plaintiff, | § § | No. 5:10–CR–593–DAE–1 |
| vs. | § § § | |
| ROBERT WARREN SCULLY, | § § | |
| Defendant. | § § | |

ORDER DENYING DEFENDANT'S
MOTION TO VACATE ORDER RESTRAINING ASSETS

Before the Court is a Motion to Vacate Order Restraining Assets ("Motion to Vacate") filed by Defendant Robert Warren Scully ("Defendant" or "Scully") on January 20, 2017.  (Dkt. # 337.)  The Government filed a Response in opposition (Dkt. # 338), and Defendant filed a Reply (Dkt. # 339).  Pursuant to Local Rule CV-7(h), the Court finds this matter suitable for disposition without a hearing.  After careful consideration of the memoranda filed in support of and in opposition to the motion, the Court—for the reasons that follow—**DENIES** Defendant's Motion to Vacate (Dkt. # 337).

BACKGROUND

On November 25, 2015, a jury found Scully guilty of one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371, one count

1

of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349, and three counts of aiding and abetting in a wire fraud scheme in violation of 18 U.S.C. § 1343. (Dkts. ## 290–91, 329.) On July 7, 2016, the Government moved for the entry of a temporary restraining order to prevent Scully from dissipating his assets and to protect them for anticipated payment of restitution. (Dkt. # 315.) The Court granted the Government's motion for a restraining order that same day ("Restraining Order"). (Dkt. # 317.)

The Restraining Order, noting the Court's intent that "Defendant's assets be preserved to ensure compensation for his victims," ordered parties listed therein from transferring, selling, encumbering, or otherwise taking any action to dispose of, make unavailable, or conceal Scully's assets, as well as real and personal property. (Id.) Additionally, the Restraining Order expressly applied to the entirety of the proceeds of the sale of Scully's property that was located at 39 Mariner Lane in Mary Esther, Florida ("the Florida Residence"). (Id.) Finally, the Restraining Order was to remain in effect until Scully "has been sentenced by this Court *and* has satisfied any restitution obligation ordered by this Court . . . or until further order of this Court." (Id. (emphasis added).)

On November 29, 2016, Scully was sentenced to 180 months' imprisonment, three years of supervised release, and ordered to pay $1,206,539.94 in restitution, a $5,000.00 fine, and a $500.00 special assessment. (Dkt. # 329.)

He appealed his sentence on December 12, 2016. (Dkt. # 332.) On December 14, 2016, the Government made a demand ("the Demand") on Scully and his counsel, Michael McCrum ("McCrum"), to recover the proceeds from the sale of the Florida Residence – understood to be held in the attorney's trust account – in partial satisfaction of Defendant's $1,212,353.75 in total monetary obligations still owed. (Dkt. # 338-1.) The Demand mentions the Court's Restraining Order, which expressly applied to the sale of Scully's Florida Residence, and asserts an estimate of $221,000.00 as the proceeds from that sale being held in the trust account. (Id.) The Demand specifies that a cashier's check or money order should be made payable to the U.S. District Clerk and sent to the United States Attorney's Office, Financial Litigation Unit. (Id.)

According to the Government, to date Scully has not paid anything on the monetary obligations imposed at sentencing. (Dkt. # 338 at 2.) On January 20, 2017, Defendant filed the instant Motion to Vacate. (Dkt. # 337.) The Government filed its Response on January 23, 2017 (Dkt. # 338), and Defendant filed a Reply on January 24, 2017 (Dkt. # 339).

## ANALYSIS

Defendant's Motion to Vacate makes two arguments. First, it urges this Court to vacate the Restraining Order to allow Scully to pay more than $65,000 in attorney's fees and costs allegedly owed to McCrum for pursuing the

pending appeal of Scully's sentence.  (Dkt. # 337 at 3.)  In support of this request, the Motion implies a Sixth Amendment right to counsel violation may be at issue because, without the assets affected by the Restraining Order, "Defendant does not otherwise have funds to pay such amount" and "to allow [Scully] the opportunity to pay his attorney of choice and to pay all necessary and appellate costs that are now due and which are likely to occur."  (Id. at 2–3.)

Second, the Motion also challenges the Government's Demand on the basis that "this Court did not find that restitution was due to any party other than the Internal Revenue Service; nor that moneys used to purchase the Florida Residence were tainted funds; nor did the Government seek nor the Court order the forfeiture of the Florida Residence."  (Id. at 1.)  By its own admission, the Motion indicates – correctly – that the Restraining Order was imposed to prevent dissipation of Scully's assets to ensure the availability of restitution under the Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A.  (Id. at 2.)

The sole legal support for Defendant's request that the Restraining Order be vacated is the Supreme Court's recent decision in Luis v. United States, 136 S. Ct. 1083 (2016).  (See id. at 2–3.)  In Luis, the Supreme Court was tasked with interpreting 18 U.S.C. § 1345, a statute allowing a court to "freeze before trial certain assets belonging to a criminal defendant accused of violations of federal health care or banking laws," including assets "obtained as a result" of the crime,

4

"traceable" to the crime, or other "property of equivalent value." Luis, 136 S. Ct. at 1087 (citing 18 U.S.C. § 1345(a)(2)). There, upon the government's motion, the district court had entered a restraining order that froze untainted assets belonging to the defendant, a restraint that the defendant argued prevented her from paying her lawyer. Id. The Supreme Court held that the pre-trial restraint of a defendant's legitimate, untainted assets, which were needed to retain counsel of her choice, violated the defendant's Sixth Amendment right to counsel. Id. at 1088.

In so finding, the Supreme Court focused on the "fundamental" nature of a criminal defendant's Sixth Amendment right to assistance of counsel, noting that the Sixth Amendment, *inter alia*, "grants a defendant a 'fair opportunity to secure counsel of his own choice'" who is qualified and whom the defendant can afford. Id. at 1089 (quoting Powell v. State of Ala., 287 U.S. 45, 53 (1932)). Critically, the Supreme Court also distinguished two of its prior cases by emphasizing that the frozen assets in Luis were untainted—in other words, the defendant had a pure and absolute property right in the assets, and the assets were not otherwise loot, contraband, or "property associated with the planning, implementing, or concealing of a crime." Id. at 1090–91. According to the Supreme Court then, a pre-trial restraint on "innocent (*i.e.*, untainted) funds" – funds that were needed to obtain counsel of choice – amounted to a Sixth Amendment violation. Id. at 1093.

5

The Court finds that Luis – for reasons similarly highlighted in the Government's response (see Dkt. # 338) – is distinguishable and inapposite.  First, the Supreme Court in Luis interpreted a statute, 18 U.S.C. § 1345, that is not at issue in the present case.  Section 1345 allows the Government to move for a restraining order *before trial* if a defendant is "alienating or disposing of property" (or intends to do the same) that is "obtained by" or "traceable to" violations of banking laws or federal health care offenses.  Here, the Government's *post-trial* motion requested the Court enter a restraining order – pursuant to the Court's authority under the All Writs Act, 28 U.S.C. § 1651 – to protect anticipated restitution under 18 U.S.C. § 3663A ("MVRA" or "Section 3663A"), while Scully was awaiting sentencing.  (See Dkt. # 315.)

Section 3663A requires a district court, as part of sentencing, to order restitution to be paid to victims of certain crimes or offenses "against property under [Title 18] . . . including any offense committed by fraud or deceit."  18 U.S.C. § 3663A(c)(1)(A)(ii); see also United States v. Serrata, No. 16-40322, 2017 WL 568324, at *2 (5th Cir. Feb. 10, 2017) (the MVRA "authorizes payment to a victim directly and proximately harmed by a defendant's offense of conviction" (internal quotations and citation omitted)).  Scully was found guilty of conspiracy to defraud the United States in violation of 18 U.S.C. § 371, conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349, and aiding and abetting in a wire fraud

6

scheme in violation of 18 U.S.C. § 1343, all violations of which satisfy the condition set forth in 18 U.S.C. § 3663A(c)(1)(A)(ii).  Accordingly, once the jury found Scully guilty on these counts in November 2015 (see Dkts. ## 290–91), anticipated restitution was not nebulous or speculative, but rather was mandated to be imposed at sentencing under the MVRA.  Pursuant to the All Writs Act, the Court therefore had authority to issue the Restraining Order – in advance of sentencing and in light of anticipated restitution – to preserve Scully's assets for the imminent, to-be-determined restitution amount.  See, e.g., Tex. v. Real Parties in Interest, 259 F.3d 387, 392 (5th Cir. 2001) (noting that "the Supreme Court has held that the All Writs Act may authorize a court to issue commands 'as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained'" (quoting United States v. N.Y. Tel. Co., 434 U.S. 159, 172 (1977))).

The two different statutes at issue – Section 1345 versus Section 3663A – highlight the different procedural postures between Luis and the present case, as well.  At the pre-trial/pre-conviction phase in Luis, the Supreme Court noted that the defendant had a pure property right in her untainted assets and the government could not make a showing of an equivalent governmental right in the untainted funds, because – at most – the government was akin to an "unsecured creditor" in the bankruptcy context.  Luis, 136 S. Ct. at 1092.  Thus, where those

7

untainted funds (*i.e.* "those not traceable to a criminal offense") were needed for the defendant to pay her attorney in that case, the Supreme Court noted it was a Sixth Amendment violation to impose a pretrial restraint on them. Id. at 1088. Here though, the Restraining Order was imposed post-conviction/pre-sentencing, where the Government at that point – per the reasoning in Luis – was *more akin* to a secured creditor who had a lien on Scully's assets in anticipation of the restitution to be ordered, giving his Title 18 convictions. See id. at 1092.

      Although it is true that the Government's lien on Scully's assets legally arose post-judgment when the restitution order was entered, not post-conviction (see 18 U.S.C. § 3613(c); see also Dkt. # 339 at 3), a trial court still may – as the Court did here – *assist*, pursuant to its All Writs Act powers, in the Government's enforcement efforts to collect restitution and other debts owed to the United States by restraining the defendant's assets *even before* a restitution order has been entered at sentencing to ensure the availability of the defendant's assets. Post-conviction, defendants "no longer are bathed with the presumption of innocence," and trial courts have power to temporarily restrain assets between conviction and sentencing pursuant to the All Writs Act so that assets are available to comply with upcoming restitution orders. See, e.g., United States v. Numisgroup Int'l Corp., 169 F. Supp. 2d 133, 138 (E.D.N.Y. 2001); see also United States v. Gates, 777 F. Supp. 1294, 1296, 1296 n.7 (E.D. Va. 1991) (noting

that a trial court's post-conviction "freeze" of defendant's assets was proper because "the court was merely assuring that assets available at the time of conviction would remain so until sentencing" and because, "[i]f a trial court does not have authority to order a defendant, *post-conviction but prior to sentencing*, not to dispose of his assets, then the court is without any meaningful ability to impose a proper sentence under the guidelines") (emphasis added); United States v. Catoggio, 698 F.3d 64, 68–69 (2d Cir. 2012) (upholding a trial court's post-conviction, pre-sentencing restraint of a defendant's assets under All Writs Act, citing, *inter alia*, Gates, supra, and Eighth Circuit case law for support).

Certainly, these two different statutes and procedural postures do not affect the veracity of a criminal defendant's Sixth Amendment right to counsel. A criminal defendant's right to counsel does not change pre-trial versus post-trial. Crawford v. Beto, 383 F.2d 604, 605 (5th Cir. 1967) ("It is settled that the Sixth Amendment right to counsel includes the right to counsel on appeal"). However, the Sixth Amendment right to counsel is not without qualification, and as the Supreme Court noted in Ross v. Moffitt, "there are significant differences between the trial and appellate stages of a criminal proceeding [where] the purpose of the trial stage . . . is to convert a criminal defendant from a person presumed innocent to one found guilty beyond a reasonable doubt [whereas a] defendant needs an

9

attorney on appeal . . . as a sword to upset the prior determination of guilt." 417 U.S. 600, 610–11 (1974).

Although the Ross decision was about an *indigent* defendant's right to appointed counsel on appeal, and here Scully is not an indigent defendant, the description of an attorney's role at each stage is apt, especially in light of the fact that the Sixth Amendment does not guarantee a criminal defendant *his attorney of choice*—if a defendant cannot afford to pay a retained attorney, a district court is obliged to appoint counsel.  See, e.g., United States v. Pattan, 931 F.2d 1035, 1042 (5th Cir. 1991) (finding that it was defendant's "failure to provide the funds for his own defense that caused any difficulties concerning his representation [such that] his inability or failure to raise the necessary funds obliged the [district] court to appoint counsel," which did not interfere with defendant's Sixth Amendment right to counsel).  Thus, though Scully certainly has a Sixth Amendment right to counsel for the appeal of his sentence, if he seemingly cannot pay McCrum (as McCrum argues for himself in the motion) the associated fees and costs of his appeal, the remedy is for this Court to appoint counsel, not to vacate an otherwise valid Restraining Order put in place to provide protection for Scully's fraud victims under the MVRA.

Another relevant qualification to the Sixth Amendment is that a "defendant's interest in preserving his relationship with a particular attorney is *not*

*afforded absolute protection*." Morris v. Slappy, 461 U.S. 1, 25–26 (1983) (emphasis added). Though Morris was about an indigent criminal defendant's desire to keep working with *appointed* counsel, as opposed to Scully's apparent desire to keep working with *retained* counsel, the legal proposition can be analogously applied here. See id. at 22–23. Scully does not have an unqualified right to continue working with, and only with, McCrum, such that this Court is by any means required to vacate the July 2016 Restraining Order for Scully to compensate McCrum. This is especially pronounced when, to date, Scully has not paid any amount of money towards the more than $1.2 million owed in restitution as part of his sentence. Thus, while it is true that the Sixth Amendment protects a defendant's right "'to select and be represented by one's preferred attorney,'" it is also true that "'a defendant may not insist on representation by an attorney he cannot afford.'" Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 624 (1989) (quoting Wheat v. United States, 486 U.S. 153, 159 (1988)).

Accordingly, the Restraining Order does not interfere with Scully's Sixth Amendment right to counsel on appeal, since the "Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, *or who is willing to represent the defendant even though he is without funds*." Id. at 624–25 (emphasis added). The Motion to Vacate indicates that neither Scully nor his wife apparently have the

11

funds, besides what is in the "frozen" or "restrained" attorney trust account, to pay McCrum's attorney's fees and costs of appeal. (Dkt. # 337 at 2.) If McCrum is not willing represent Scully "even though [Scully] is without funds," see Caplin & Drysdale, 491 U.S. at 624–25, then McCrum should file a Motion to Withdraw from Representation in accordance with the Local Rules. This Court is neither required to vacate its otherwise valid Restraining Order in order to ensure that Scully's retained counsel is paid "a minimum of $65,000 in attorney's fees and costs," nor impressed with the Motion's unavailing "Hail Mary" that Scully is "willing to transfer the balance [of the restrained assets] to the clerk as partial payment of the court-imposed obligations," as if Scully's restitution requirements imposed by this Court at sentencing are an afterthought he is generously considering fulfilling. (See Dkt. # 337 at 3.)

Where the Supreme Court in United States v. Monsanto held that a *pre-trial* restraining order freezing a defendant's assets did "not 'arbitrarily' interfere with a defendant's 'fair opportunity to' to retain counsel," see 491 U.S. 600, 616 (1989) (quoting Powell, 287 U.S. at 69), there is even greater force to this Court's conclusion that there is no Sixth Amendment violation in upholding its *post-conviction/pre-sentencing* Restraining Order to ensure the availability of Scully's assets under the MVRA.

Furthermore, the Government's December 2016 Demand was proper in light of the Government's post-judgment enforcement powers under the MVRA. See United States v. Ekong, 518 F.3d 285, 286 (5th Cir. 2007) ("'The MVRA provides the Government authority to enforce victim restitution orders in the same manner that it recovers fines and by all other available means'" (quoting United States v. Phillips, 303 F.3d 548, 550–51 (5th Cir. 2002))).  It matters not – contrary to Defendant's assertion – that "this Court did not find that restitution was due to any party other than the IRS."  (See Dkt. # 337 at 1.)

Accordingly, Defendant's Motion to Vacate (Dkt. # 337) is **DENIED.** Should Scully require the appointment of counsel, his attorney is advised to move for withdrawal from representation, and the Court will undertake consideration of such a motion at the proper time.

CONCLUSION

For the reasons set forth, the Court **DENIES** Defendant's Motion to Vacate (Dkt. # 337).

**IT IS SO ORDERED.**

**DATE:** San Antonio, Texas, March 2, 2017.

_____
DAVID ALAN EZRA
UNITED STATES DISTRICT JUDGE